UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Erica Cruz,<br><br>　　　Plaintiff,<br><br>v.<br><br>Stenger & Stenger, P.C.,<br><br>　　　Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE INDIANA DECEPTIVE CONSUMER SALES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Erica Cruz also known as Erica Porter ("Erica"), is a natural person who resided in South Bend, Indiana, at all times relevant to this action.

2. Defendant, Stenger & Stenger, P.C. ("Stenger"), is a Michigan professional corporation that maintained its principal place of business in Grand Rapids, Michigan, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Plaintiff's claims under the Indiana Deceptive Consumer Sales Act, I.C. 24-5-0.5 et seq. ("IDCSA"), because they share a common nucleus of operative fact with Plaintiff's claims under the FDCPA.

1

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, Stenger collected consumer debts.

7. Stenger regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. Stenger is a "debt collector" that regularly collects consumer debts as defined by 15 U.S.C. §1692a(6).

9. Stenger is a "supplier" as defined by § 24-5-0.5-2(a)(3) of the IDCSA.

10. As described, *infra*, Stenger contacted Erica to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Erica is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. In 2017, Stenger obtained a judgment against Erica on behalf of its client, LVNV Funding.

14. Around October 2022, Stenger contacted Erica pertaining to Stenger attempting to execute on that judgment.

15. On or around October 17, 2022, Stenger agreed to suspend execution attempts against Erica if Erica agreed to make monthly payments in the amount of $100 if Erica accepted before Erica's next court date.

16. Stenger led Erica to believe that additional collection attempts would cease if Erica accepted the terms.

17. Stenger purposefully led Erica to believe that, if she agreed, she did not need to attend court and Stenger would cease its current execution strategy.

18. A few weeks later, Erica called to accept Stenger's settlement offer and was told, during multiple different telephone calls throughout this period, that there was, in fact, no settlement offer.

19. Thereafter, Erica spent considerable time communicating, and attempting to communicate with Stenger to get them to honor their prior settlement offer.

20. During several of these conversations, Stenger made regular misrepresentations about the status of the debt, the settlement offer, and related facts concerning the debt and the settlement.

21. Additionally, Stenger accused Erica of making up the facts surrounding the settlement agreement.

22. Finally, in October 2022, Stenger agreed to honor its prior settlement terms if payments began prior to December 16th.

23. On November 1, 2022, Erica telephoned Stenger to make her first $100 payment as agreed.

24. Shortly thereafter, on the same date, Erica received notice from her bank that, contrary to the settlement terms, Stenger had not cancelled a bank garnishment it directed to Erica's bank.

25. As a result, Stenger caused the entire amount of the judgment to be seized from Erica's bank account.

26. In the continued oddity of Stenger's conduct relating to Erica's account, on November 8, 2022, Stenger mailed Erica a letter ("Settlement Letter") that indicated the current balance on the account was $1,188.82 and oddly offered to accept this amount ("Settlement Amount") in full satisfaction of the debt. *See* Exhibit A.

27. Specifically, the relevant portion of the letter stated:

> "Your total balance is $1,188.82 as of the date of this letter. However, $1,188.82 will be accepted as payment in full through December 8, 2022."

28. The amount of the Settlement Offer presented to Erica in the Settlement Letter is inconsistent with the settlement offer that Erica had already accepted.

29. The Settlement Amount and the full Balance referenced in the Settlement Letter were the same number.

30. The contents and timing of the Settlement Letter violated the law.

31. As a result of Stenger's conduct, for months, Erica was prevented from accessing a significant amount of money that she needed in order to live.

32. In fact, it took months for Stenger to finally honor its agreement and to cancel its bank garnishment.

33. Stenger's collection conduct, including, but not limited to its letters and false statements on the telephone, caused Erica concrete harm in the form of frustration, annoyance, aggravation and anxiety.

34. In addition, each time Stenger forced Erica to spend time dealing with Stenger's unlawful conduct, Stenger occupied Erica's telephone number for hours such that Erica was unable to make or receive other phone calls at that telephone number during that time thus causing additional concrete harm.

35. Stenger's conduct also caused concrete harm as Stenger forced Erica to lose considerable time by having to tend to Stenger's incorrect statements and odd letters.

36. Additionally, Erica suffered concrete harm as a result of Stenger's actions, including but not limited to, invasion of privacy, aggravation that accompanies feeling lied to by a law firm, emotional distress, increased usage of her telephone services, loss of cellular phone storage

capacity, decreased battery life on her cellular phone, diminished space for data storage on her cellular phone.

37. Finally, Erica suffered concrete harm from her lost access to the funds in her bank account which caused Erica to rely on credit cards which continue to accrue interest.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

38. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 37 above as if fully set forth herein.

39. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

40. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

41. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

42. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

43. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 37 above as if fully set forth herein.

44. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

45. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 37 above as if fully set forth herein.

46. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Indiana Deceptive Consumer Sales Act

47. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 37 above as if fully set forth herein.

48. The IDCSA states, in relevant part:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. § 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.),

> including any rules or regulations issued under the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.)." I.C. § 24-5-0.5-3(b)(20).
>
> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. § 24-5-0.5-4(a)(1)(2).

49. Defendant's collection activity in connection with the Subject Debt is a "consumer transaction" as that term is defined by the IDCSA at I.C. § 24-5-0.5-2(a)(1)(C).

50. Defendant engaged in unfair, abusive, and deceptive conduct in its transactions with Plaintiff, in violation of I.C. §§ 24-5-0.5-3(20), violating the FDCPA.

51. Defendant intended that Plaintiff rely on its unlawful communications in order to procure payment of the debt and/or prevent Plaintiff from exercising her rights. As such, Defendant committed a "willful deceptive act" as that term is used and/or contemplated within the IDCSA.

52. Plaintiff has been harmed and has suffered damages as a result of Defendant's unlawful collection practices as described herein.

53. Plaintiff is therefore entitled to relief pursuant to I.C. § 24-5-0.5-4(a)(1)(2).

## JURY DEMAND

54. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

55. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

b. Judgment against Defendant for statutory damages as provided under I.C. § 24-5-0.5-4(a)(1)(2).

c. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:  March 1, 2023

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
Hyslip Legal, LLC
207 S. Harrison Street, Suite A
Algonquin, IL 60102
Phone: 614-362-3322
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*